UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MATTEO ANELLO,

       Plaintiff,

v.

CITY OF NIAGARA FALLS, OFFICER
FRANCO TALLARICO, ROBERT
ANDERSON, JR., SAMUEL FRUSCIONE,
LEWIS ROTELLA, CHARLES WALKER, and
CHRIS ROBINS, individually and as members
of the Niagara Falls City Council,

       Defendants.

**DECISION AND ORDER**
09-CV-715S

1.     Plaintiff, Matteo Anello, brings this 42 U.S.C. § 1983 action alleging that the City of Niagara Falls, and others associated with it, violated his constitutional rights in the course of one of the City's council sessions. He asserts claims under First, Fourth, Fifth, and Fourteenth Amendments.

Defendants presently move for summary judgment, and, for the following reasons, that motion is granted in part and denied in part.

2.     The facts—most of which are captured on video—are relatively straightforward and undisputed. The City of Niagara Falls holds regular council sessions where, according to City of Niagara Falls' Resolution No. 1993-137, citizens are permitted to speak "on any topic of public concern for a time not to exceed five (5) minutes." (Resolution, attached as "Ex. E" to Anderson Decl.; Docket No. 33-1.) While some of the time set aside for public comment is dedicated to the session's agenda items, on October 22, 2007, Anello was one of seven speakers who planned to discuss general matters

touching the "good of the community." (Speaker List, attached as "Ex. E" to Brown Decl.: Docket No. 32-2.)

3. When his turn came, Anello took the position behind the lectern and began to cordially address the council members and the audience. (Video of council proceedings, at 00:13, attached as "Ex. F." to Brown Decl.; Docket No. 32-2.)[1] In a calm fashion, he read the following from a prepared script:

> I've titled this little presentation—Mr. Chairman, members of the council, fellow citizens—I've titled this presentation "Guineas and Greece Balls," sub-titled "Where There is Smoke There is Fire." My intention was to send this statement to the Gazette and to the Buffalo News to let it be written in their respective opinion pages. I've been going back and forth in my mind trying to decide what to do. I finally decide[d] that I need to present this to the council and to the citizens of Niagara Falls in this setting because I believe that it is important enough that it be heard from me directly. I don't want to hide, as some do, in the security they feel when they make statements about others to reporters, or send articles to be written in the opinion pages. There is nothing wrong with this, but it is cowardly, as the person against whom the statement is made cannot defend him or herself. Three times in the past few weeks, different people recounted incidences to me during which Council Chairman Robert Anderson displayed, if these incidences are true, his ignorance in how he, as a councilman or as a person, regards Italians. I want to reiterate: these scenarios came to me during casual conversation and only Mr. Anderson, God, and the people who heard him can know whether or not they are true. If true, and I believe they are, these occurrences in which he aimed his ignorance towards Italians are shameful.

(Video, at :00 to 1:38.)

At that point, someone, presumably a council member, said ,"Stop." (Video, at 1:39.) Anello, responded, "I've got the floor." (Anderson Decl., ¶ 21; Docket No. 33.) Defendant

---

[1] The video is maintained in the Clerk's Office of the Western District of New York.

Robert Anderson then said, "No you don't have the floor." (Id.) Anello tried to continue with his remarks, but soon a gavel was pounded three times and Anderson directed Defendant Franco Tallarico, a Niagara Falls' Police Officer, to escort Anello from the lectern. (Video, at 2:12; Anderson Decl., ¶ 24.)

4. Anello protested his removal. "I violated no rules of this chamber," he pleaded. (Video, at 2:34.) But Officer Tallarico, after asking several times for him to leave and with Anello still arguing, physically escorted him from the lectern to a nearby bench to gather his belongings. (Id., at 3:10-3:43.) Anello, however, continued to argue that he should be permitted to speak, prompting Officer Tallarico to become more aggressive, and eventually Tallarico handcuffed him and removed him from the chamber. (Id.)

Anello was charged with disorderly conduct and resisting arrest. (Def.'s Statement of Facts, ¶ 49; Docket No. 38.) Those charges resulted in an "adjournment in contemplation of dismissal." (Id.)

5. Anello alleges two causes of action arising out of his removal from the council: (1) a claim against Officer Tallarico and the City of Niagara Falls for false arrest and malicious prosecution, and (2) a claim against each of the individual defendants and the City of Niagara Falls for violating his First Amendment right to free speech. Defendants move for summary judgment on several grounds.

6. Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A

"genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

7. Initially, Defendants do not argue that they restricted Anello's speech, but they assert that they are entitled to summary judgment on Anello's First Amendment claim because Anello acted "disruptively" at the council meeting, and thus, their response was lawful. Specifically, Defendants point to Anello's use of the words "guineas and grease balls" and the fact that his accusations were based exclusively on rumor.

8. "Under the prevailing constitutional framework, speech restrictions imposed by the government on property that it owns are analyzed under a "forum based approach." Hotel Employees & Rest. Employees Union, Local 100 & Vicinity, AFL CIO v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 544 (2d Cir. 2002) (quoting Int'l Soc. for

Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678, 112 S. Ct. 2701, 120 L. Ed. 2d 541 (1992)). A "limited" public forum exists "where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." Travis v. Owego–Apalachin Sch. Dist., 927 F.2d 688, 692 (2d Cir.1991). Here, because the City of Niagara Falls invited public discourse on two limited subjects—specific agenda items and the welfare of the City of Niagara Falls—it is conceivable that those meetings should be viewed as limited public forum for the purposes of First Amendment analysis. See Devine v. Vill. of Port Jefferson, 849 F. Supp. 185, 189 (E.D.N.Y. 1994) (council meeting is a limited public forum). "'[I]n a limited public forum, government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre.'" Hotel Employees, 311 F.3d at 545-46 (quoting Travis, 927 F.3d at 692). As for speech falling outside the specified categories for which the forum has been opened, "restrictions need only be viewpoint neutral and reasonable." But the government may not, even in a limited forum, "regulat[e] speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 829, 115 S. Ct. 2510, 2516, 132 L. Ed. 2d 700 (1995).

9.     Although the First Amendment "embraces at the least the liberty to discuss publicly and truthfully all matters of public concern," Consol. Edison Co. v. Pub. Serv. Comm'n, 447 U.S. 530, 534-35, 100 S. Ct. 2326, 65 L. Ed. 2d 319 (1980) (internal citation and quotation marks omitted), Defendants argue that this freedom is not abridged where, in a limited public forum, a citizen's expression is quelled due to his or her disruptive

5

Case 1:09-cv-00715-WMS-LGF   Document 50   Filed 07/11/12   Page 6 of 11

behavior.

Even assuming this to be true, however, the video of the session speaks for itself: before Anderson instructed him to stop speaking, it can hardly be said that Anello's actions were discourteous, much less disruptive. Indeed, a review of the video reveals that there can be no question that he spoke calmly, even cordially, in presenting his views.

The contrast between the type of action that has been found disruptive and the manner in which Anello spoke here is demonstrated by Defendants inadequate attempt to support their argument with case law. They first point to Devine, where, speaking at a village council session, the plaintiff "began to shout, drown out other members of the community, and interrupt members of the Board as they attempted to proceed with the business at hand." 849 F. Supp. at 189. As a result, the Mayor threatened the plaintiff with arrest if he did not step down. Id. The court found no constitutional violation in the Mayor's threat. Id.

Defendants also cite Brenchley v. Village of Phoenix, No. 5:01 CV 0190, 2005 WL 2437027, at *3-*4 (N.D.N.Y. Sept. 30, 2005). There, after having already spoken on his chosen topic numerous times in previous council sessions, the plaintiff "raised his voice and continued to insist that the Mayor answer questions on th[e] issue—even after the Mayor said 'they were working on it' and asked plaintiff to move on to other business." Id. The court found no constitutional violation in the Mayor's insistence that the plaintiff cease his presentation. Id.

Lastly, Defendants cite Jones v. Heyman, 888 F.2d 1328, 1332 (11th Cir. 1989). There, the plaintiff "began by admonishing the commission to act more prudently in its spending habits, particularly with respect to its spending on waste disposal. Id. But "the

commissioners' general fiscal habits were not the topic of debate, [] and the mayor quickly directed [the plaintiff] to speak only on the relevant issue." Id. The plaintiff then responded that his comments were germane and that it was the mayor's "problem" if he failed to recognize this. Id. He was then warned that any further outbursts would result in his removal. The plaintiff responded, "I don't think you're big enough," and was expelled. Id. Like the previous cases, the court found no violation. Id.

10. Here, Anello's allotted time was not restricted to a particular agenda item; he was not loud; he did not shout; he did not exceed his time limit; he did not instigate a physical confrontation. Simply put, there appears to be no analogous authority to support Defendants' position. Indeed, the only direct support for Defendants position that his behavior was disruptive derives from Defendant Anderson's own declaration. (See Def.'s Br. in Supp. of Summ. J., at 9; Docket No. 35 (citing Anderson Decl.))

11. While Anello's use of the phrase "guineas and grease balls" could be deemed offensive, his usage of the phrase must be considered in context; he was not (as the opening of Defendants' brief implicitly suggests) aiming these invectives at anyone inside or outside of council chambers. Rather, he was attempting (he was cut off before he could actually make any accusations) to attribute the use of those words to Defendant Anderson. Indeed, his remarks were prompted in the first place by his own aversion to the City's council chairman alleged use of these derogatory words. This is plainly not the type of disruptive behavior that, as a matter of law, is legitimately suppressed.

12. Defendants further argue that his speech was disruptive because it was founded on stories relayed to him by third parties. But they do not support this argument with authority. And without said authority, this Court declines Defendants' invitation to rule

7

that speech is *de jure* disruptive simply because it is based on rumor.

13.     Under the City of Niagara Falls' by-laws, Anello was permitted to speak for five minutes on any topic concerning the general welfare of the City. He chose to question the character of the City's council chairman and was silenced. This, at the least, presents a question of fact as to whether Anello was impermissibly removed based on "the opinion or perspective of the speaker" or whether he was removed for other, permissible reasons. See Rosenberger, 515 U.S. at 829.

****

14.     Defendants Samuel Fruscione, Lewis Rotella, Charles Walker, and Chris Robins argue that they should be dismissed from this case, as they played no role in the removal. But Fruscione testified that Robins pounded the gavel and told Anello that he was out of order. (Vinal Aff.,¶ 53; Docket No. 42.) And Fruscione admitted that he turned off Anello's microphone. (Id., ¶ 54.)[2] This is sufficient to demonstrate that these defendants were involved in the potential violation of Anello's free-speech rights.  As for Rotella and Walker, however, Anello makes no argument that they did anything to restrict his remarks; those defendants will therefore be dismissed.

15.     Next, the remaining defendants argue that they are entitled to qualified immunity. Officials are protected from § 1983 liability by qualified immunity if their actions (1) did not violate clearly established law or (2) were objectively reasonable. See Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999).

---

[2] Anello's responsive memorandum of law is dedicated exclusively to the First Amendment issue. He makes this argument, concerning Fruscione and Robins, through an attorney affidavit. This Court will nonetheless consider it. Anello's attorney, however, is cautioned to avoid omitting arguments from her memoranda of law, or risk waiver.

Defendants have not met either of these prongs. As stated by the Ninth Circuit, "[t]he council members should have known that the government may never suppress viewpoints it doesn't like" and "occasionally must tolerate offensive or irritating speech." Norse v. City of Santa Cruz, 629 F.3d 966, 979-80 (9th Cir. 2010) (Kozinski, J., concurring) (citing Rosenberger, 515 U.S. at 829). Viewing the facts in a light most favorable to Anello, the remaining defendants' "behavior amounts to classic viewpoint discrimination for which they're not entitled to qualified immunity." Id.

16. Next, Defendants Tallarico and the City of Niagara Falls argue that Anello's false- arrest and malicious-prosecution claims cannot withstand summary judgment.

17. As an initial matter, Anello's malicious-prosecution claim must be dismissed. A necessary element in sustaining such a claim is that the prosecution must be "terminated in favor of the accused." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir.1997). Here, after being charged with resisting arrest and disruption of the peace, Anello's case was disposed by an adjournment in contemplation of dismissal; his claim is thus not actionable. See Shain v. Ellison, 273 F.3d 56, 68 (2d Cir. 2001) ("Because an adjournment in contemplation of dismissal is not considered to be a favorable termination, [the plaintiff] cannot sustain his malicious prosecution claim based on the criminal proceeding.").

18. Anello's false-arrest claim also fails to withstand summary judgment. A § 1983 claim for false arrest requires proof that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to confinement; and (4) the confinement was not otherwise privileged. Posr v. Doherty, 944 F.2d 91, 96 (2d Cir.1999). "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118

(2d Cir. 1995)

19.     The evidence here undisputedly demonstrates that, after being removed from the podium pursuant to Anderson's directive, Anello refused Officer Tallarico's admonishments to leave the chambers and instead continued, with increasing aggressiveness and agitation, to argue with both Officer Tallarico and the council members. It follows that a reasonable officer could have found probable cause with respect to New York Penal Law § 240.20, which prohibits a person from disturbing any lawful assembly with intent to cause public inconvenience, annoyance, or alarm. See Jenkins v. City of New York, 478 F.3d 76, 88 (2d Cir. 2007) ("[U]nder both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable."). This claim must therefore be dismissed.

20.     Finally, to the extent that Anello seeks punitive damages against the City of Niagara Falls or the individual defendants in their official capacity, those claims must be dismissed. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) (punitive damages may not be awarded against a municipality in a § 1983 action); DiSorbo v. Hoy, 343 F.3d 172, 182 (2d Cir. 2003).

****

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 32) is GRANTED in part and DENIED in part, in accordance with this Decision.

SO ORDERED.

Dated: July 8, 2012
       Buffalo, New York

                                                  /s/William M. Srretny
                                                  WILLIAM M. SKRETNY
                                                          Chief Judge
                                          United States District Court